UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KAREN E. DILLON,                                  :
                                                  :
                 Plaintiff,       :    Case No. 09 CV 7958 (SHS)
                                                  :
        -against-                               :
                                                  :
                                                  :
METROPOLITAN LIFE INSURANCE                       :
COMPANY,                                          :
                                                  :
                Defendant.         :
-----------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## PLAINTIFF KAREN DILLON'S MOTION TO REMAND

                                                 Frank S. Occhipinti (FO7204)
                                                 Charles A. Stewart, III (CS7099)
                                                 STEWART OCCHIPINTI, LLP
                                                 65 West 36th Street, 7th Floor
                                                 New York, New York 10018
                                                 (212) 239-5500 (tel)
                                                 (212) 239-7030 (fax)
                                                 focchipinti@somlaw.com

                                                 *Attorneys for Plaintiff Karen Dillon*

## PRELIMINARY STATEMENT

Karen Dillon ("Dillon") respectfully submits this Reply Memorandum of Law in further support of her motion for an order, pursuant to 28 U.S.C. § 1447, remanding the complaint in the action styled *Karen Dillon v. Metropolitan Life Insurance Company* and bearing Index No. 112240/09 (the "State Action") to the Supreme Court of the State of New York.

## ARGUMENT

**I.    MetLife Has Failed to Sustain its Burden of Demonstrating the Propriety of the Removal of Dillon's State Court Action**

MetLife bears the burden of demonstrating by "competent proof" the propriety of its removal of the State Action. *Cal. Pub. Employee's Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004); *Hill v. Delta Int'l Mach. Corp.,* 386 F.Supp.2d 427, 429 (S.D.N.Y. 2005). Because MetLife has failed to carry its burden, this Court "must remand the case to the court in which it was filed." *Hill,* 386 F.Supp.2d at 429.

**A.    The Erroneous "Facts" that MetLife Relies Upon Are Not "Competent Proof" That it Properly Removed the State Action**

As reflected in her complaint, Dillon has chosen to base her claim for insurance proceeds solely upon state law – namely MetLife's obligation to pay life insurance benefits under a non-ERISA policy. *See* Dillon Opening Br., at pp. 5-6. Although the law states that federal courts determine whether subject matter jurisdiction exists by looking at the face of the complaint "as it existed at the time the petition for removal was filed," *Hill,* 386 F.Supp.2d at 429; *Beneficial National Bank v. Anderson,* 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003), MetLife has sought to improperly rely upon a myriad of disputed "facts" outside of the complaint in an effort to establish subject matter jurisdiction. This effort is unavailing.

1

To buttress its argument that this action is about "eligibility" under an ERISA plan, as opposed to state law regarding unilateral mistake, MetLife repeatedly argues that Jack Dillon was "inadvertently terminated" by Parker Hannifin on September 23, 2008, "thus triggering the right to convert his group life insurance coverage to an individual policy pursuant to the terms of the Plan." MetLife Opp. Br., at 1.[1] This statement is false. Parker Hannifin did not "inadvertently terminate" Jack Dillon. It terminated him intentionally, as reflected in numerous communications between Parker Hannifin, Dillon and MetLife prior to Jack Dillon's death. *See* Occhipinti Reply Declaration dated October 16, 2009 ("Occhipinti Reply Decl."), at Ex. "A".

MetLife disingenuously argues that "[t]he Plan considers an employee on disability actively at work for specified periods." MetLife Opp. Br., at p. 2. This statement also is false. The Plan states: "If you are not Actively at Work as an Employee because of a situation set forth below, the Employer <u>may</u> deem you to be in Active Work as an Employee … in order that certain of your benefits under this Plan may be continued." Notice of Removal, Exhibit 2, Parker Hannifin Plan, at p. 24. (emphasis added). Although Parker Hannifin could have maintained Jack Dillon as an active employee, it decided instead to terminate him.

MetLife argues that "[p]rior to the issuance of the conversion policy, Parker Hannifin realized its error, placed [Jack] Dillon back on active status and asked MetLife to terminate the conversion process." MetLife Opp. Br., at 1. First, there is no evidentiary support for any of the facts included in this statement (or for any contention MetLife makes). Nor is there evidence demonstrating communications between Parker Hannifin and MetLife about the former committing an "error" by terminating Jack Dillon. Indeed, all of the documentary evidence supports the proposition that Parker Hannifin terminated Jack Dillon purposefully and confirmed

---

[1] "MetLife Opp. Br., at __" refers to the Memorandum of Law in Support of Defendant's Opposition to Plaintiff's Motion to Remand.

2

the termination several times. There also is no competent evidence demonstrating that Parker Hannifin ever reactivated Jack Dillon prior to his death. Certainly, the Dillons were not notified that Jack Dillon had been reactivated. Moreover, documents produced by MetLife to Dillon demonstrate that MetLife first realized that it had sold two policies on Jack Dillon's life after his death. Occhipinti Reply Decl. Ex. "D".

Finally, there is no evidence in the record supporting MetLife's statement that, "[u]nder the express terms of the Plan, Plan participants cannot simultaneously maintain group and individual coverage." MetLife Opp. Br. at 1. In its Notice of Removal, MetLife attached a copy of the Parker Hannifin Employee Benefit Plan. *See* Notice of Removal, Ex. 2. MetLife has cited no language from this Plan, nor is there any language that can be found, which "express[ly]" states that Plan participants cannot simultaneously maintain group and individual coverage.

If this Court goes beyond the allegations of Dillon's complaint and reviews extrinsic evidence, the facts demonstrate that MetLife sold two policies covering Jack Dillon's life: the ERISA policy it paid on (which is not at issue in this case), and the non-ERISA policy it now seeks to rescind. After Jack Dillon was terminated, the Dillons sought to convert Jack Dillon's group life policy to an individual insurance policy. *See* Occhipinti Reply Decl. Ex. "A", e-mail communications among Dillon, MetLife and Parker Hannifin. After initiating the conversion process, however, a MetLife representative told the Dillons that their only option was to buy a second policy and pay a new monthly premium of $2,382. *Id.*, Ex. C. MetLife approved the Dillon's application and issued the second life insurance policy on October 26, 2008. *Id.,* Ex. D. The ERISA group policy was never cancelled and Dillon continued to pay MetLife a separate monthly premium of $172.35 towards this policy. *Id.,* Ex. "E". Jack Dillon died on October 29, 2008. *Id.,* Ex. "F". Ms. Dillon was first notified that MetLife sought to rescind the non-ERISA

policy <u>after</u> her husband's death on November 4, 2008, *id.,* Ex. "H", the same day she filed her claim against that policy. *Id.,* Ex. "G". At no time prior to its opposition brief on this motion did MetLife ever take the position that the Plan expressly does not permit a Parker Hannifin employee to simultaneously maintain group and individual coverage. Indeed, the uncontroverted facts demonstrate that Dillon paid premiums to MetLife for both the group policy and the individual policy, and that the individual policy was issued and delivered to the Dillons prior to Jack Dillon's death.

### B. This Action Does Not Relate to a Benefit Plan

The parties agree that ERISA preempts state laws insofar as they relate to an employee benefit plan covered by ERISA. *See, e.g., McGowan v. U.S. Life Ins. Co.,* 2007 U.S. Dist. LEXIS 7427, at *2 (S.D.N.Y. Jan. 24, 2007); *Ziperski v. First Unum Life Insurance Co.*, 2006 U.S. Dist. LEXIS 3116 (S.D.N.Y. Jan. 31, 2006) (granting remand motion in action to recover benefits under conversion disability policy). The parties also agree that claims arising from a conversion policy are *not* preempted by ERISA. *Id,* at *6-7 (citing cases). MetLife does not dispute that "laws of general application" with only incidental impact upon ERISA plans are not preempted, *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 145-47 (2d Cir. 1989), *cert. denied,* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989), or that the non-ERISA policy it sold to Dillon was administered independently of the group plan. Instead, MetLife argues that the "sole and dispositive issue in this case" is "whether [Jack] Dillon had the right to convert under the Plan." MetLife Opp. Br., at p. 8. Ms. Dillon's complaint, however, does not assert such a claim. In addition, there is simply no "competent proof" whatsoever to demonstrate that Jack Dillon did not have the right, as a terminated employee, to convert under the Plan.

The cases cited by MetLife are either inapposite or support Dillon. In *Demars v. Cigna Corporation,* 173 F.3d 443 (1st Cir. 1999), for example, defendants argued, as MetLife does here, that a conversion policy and an ERISA plan were "connected" or "related" since the policyholders "obtained the conversion policy by virtue of rights granted by National Life's group disability benefits plan." 173 F.3d at 145. The First Circuit rejected this argument, stating in relevant part:

> [T]here is obviously a type of "but for" relationship linking Demars's conversion policy and National Life's ERISA plan. But "infinite relations cannot be the measure of pre-emption." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 131 L.Ed.2d 695, 115 S.Ct. 1671 (1995). … The proper question to ask under § 1144(a) is not whether Demars's claims relate to her conversion policy, which relates in turn to an ERISA plan, but rather whether the conversion policy is itself subject to ERISA regulation as an ERISA plan.

*Id.* Thus, *Demars* strongly supports Dillon because, not only did the First Circuit reject an argument similar to the one MetLife makes here, but MetLife has not shown that the policy upon which Dillon has sued is subject to ERISA regulation.

*Howard v. Gleason Corp.,* 901 F.2d 1154 (2d Cir. 1990), on the other hand, is clearly inapposite. In *Howard,* employees whose employment with Alliance terminated had the option of converting their group life policies to individual policies within 31 days after termination. The plaintiff's husband was terminated and he did not exercise his insurance option. Upon the husband's death, the plaintiff submitted claims, which the insurance company denied on the ground that the policies had lapsed. The plaintiff then sued in state court alleging that her husband's employers had violated New York state law by failing to inform her husband of his conversion rights within 15 days of the termination of his employment with Alliance. The Second Circuit affirmed the district court's holding that the action was preempted, stating:

5

"The state's notice requirement directly affects a primary administrative function of the benefit plan. It requires employers to permanently track employees and the events that trigger the conversion option and then to send them timely conversion notices." *Id.,* at 1158. Here, MetLife has not cited a single administrative function of the Parker Hannifin Plan that would be affected by allowing Dillon to pursue her claims respecting the individual policy in state court. Nor does a single one of MetLife's 12 affirmative defenses reference ERISA. *See* Occhipinti Declaration dated October 2, 2009, at Ex. B, MetLife Answer, at pp. 5-8.

      The Fourth Circuit's decision in *White v. Provident Life & Accident Insurance Company,* 114 F.3d 26 (4th Cir. 1997) is both factually distinguishable and legally irrelevant. First, the *White* court's decision relied upon three provisions in the group policy which explicitly stated, among other things, that "nothing will be paid under the [conversion policy] if any amount is paid under [the group policy]. Thus, the court stated, "under this ERISA plan, a beneficiary may claim coverage under either the group plan or a conversion policy, but not both." *Id.,* at 28. MetLife has pointed to no express language in either the Parker Hannifin Plan or the group policy which contains similar language. Moreover, the *White* court embraced the position that "ERISA applies to conversion policies." *Id. Ziperski* and the majority of courts to consider this argument have rejected it. 2006 U.S. Dist. LEXIS 3116, at *5 ("most courts that have considered the question hold that claims arising from the conversion policy itself are *not* preempted by [ERISA]") (emphasis in original). Indeed, Judge Cote in *Ziperski* explicitly refused to follow the precedents established by three other cases from outside of this District upon which MetLife relies: *Glass v. United of Omaha Life Insurance Company,* 33 F.3d 1341 (11th Cir. 1994); *Painter v. Golden Rule Ins. Co.,* 121 F.3d 436 (8th Cir. 1007); and

*Massachusetts Casualty Insurance Company v. Reynolds,* 113 F.3d 1450 (6th Cir. 1997). *Id.,* at *6-7.

MetLife's argument that *Ziperski* is "inapplicable as Ziperski's employment terminated and her disability coverage converted many years prior to the commencement of the lawsuit," MetLife Opp. Br. at 7, is without merit. First, the evidence demonstrates that Parker Hannifin terminated Jack Dillon. Second, the period of time between conversion and the commencement of a lawsuit is irrelevant. What is significant is that, as in *Ziperski*, Dillon seeks to obtain benefits under the non-ERISA insurance policy that was issued and delivered to her.

## II.     This Court Should Award Dillon Legal Fees And Costs Under 28 U.S.C. § 1447(c)

MetLife argues that it has a "colorable and reasonable legal basis for removal," and therefore this Court should not award Dillon attorneys' fees under 28 U.S.C. § 1447(c). Dillon respectfully disagrees. As demonstrated above, MetLife has made factual assertions that are belied by the record in an effort to claim subject matter jurisdiction where none exists. Although Dillon is not claiming that MetLife acted frivolously or in bad faith, neither is a prerequisite for an award of fees and costs under 28 U.S.C. § 1447(c). *Morgan Guar. Trust v. Republic of Palau,* 971 F.2d 917, 923 (2d Cir. 1992). MetLife's state of mind is irrelevant. Instead, Dillon respectfully suggests that MetLife had no "objectively reasonable basis" for removal of the action from state to federal court where its asserted basis for removal is factually contradicted by the record and contrary to the weight of authority. Given the fact that MetLife carries a heavy burden to demonstrate that removal was proper, an award of fees and costs is appropriate in this case. *See Citigroup, Inc. v. Wachovia Corp.,* 613 F.Supp.2d 485, 496 (S.D.N.Y. 2009); *Schepis v. Local Union 17, United Bhd. Of Carpenters and Joiners,* 989 F.Supp. 511, 518 (S.D.N.Y.

1998); *In re Friedman & Shapiro, P.C.,* 185 B.R. 143, 145 (S.D.N.Y. 1995); *Wallace v. Wiedenbeck,* 985 F.Supp. 288, 291 (N.D.N.Y. 1998).

## CONCLUSION

For the foregoing reasons and those previously expressed, Dillon respectfully seeks an order remanding the State Action to the Supreme Court of the State of New York, and awarding fees and costs on the ground that MetLife lacked an objectively reasonable basis for removal pursuant to 28 U.S.C. § 1447(c).

Dated:  New York, New York
October 16, 2009

Respectfully submitted,

**STEWART OCCHIPINTI, LLP**

By:_____/s/_____
Frank S. Occhipinti (FS7204)
Charles A. Stewart, III (CS7099)
65 West 36th Street, 7th Floor
New York, New York  10018
(212) 239-5500

*Attorneys for Plaintiff Karen Dillon*