UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                            :

KAREN E. DILLON,                                   :

                                      Plaintiff,               :          09 Civ. 7958 (SHS)

                                                           :          <u>OPINION & ORDER</u>

                 -against-                       :

METROPOLITAN LIFE INSURANCE     :
COMPANY,

                                    Defendant.             :

------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      This action arises from a group life insurance policy issued by defendant Metropolitan Life Insurance Company ("MetLife") to the late husband of plaintiff Karen E. Dillon. Mr. Dillon was eligible to receive that group term life insurance policy due to his employment by non-party Parker Hannifin Corporation. In the last weeks of Mr. Dillon's life, under the impression that Mr. Dillon had been terminated by Parker Hannifin, Mrs. Dillon attempted to "convert" that group policy into an individual one. Shortly thereafter, upon Mr. Dillon's death, MetLife paid out pursuant to the group policy which remained valid because, despite Parker Hannifin's representations, Mr. Dillon was never actually terminated by Parker Hannifin and his coverage under the group policy had never been cancelled.

      Plaintiff does not dispute that MetLife's payment pursuant to the group policy was correct. Instead, she argues that her attempt to convert the group policy into an individual one created a second, additional policy, and therefore that she should be

entitled to recover under both the group policy and the individual one. MetLife has refused to pay anything beyond its obligations under the group policy.

Dillon initially commenced this action in New York Supreme Court, New York County, alleging breach of contract and seeking a declaratory judgment respecting the validity of the individual policy. Defendant then removed the action to this Court contending that because the group plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., the complaint raises a federal question. See 28 U.S.C. 1441(a).

Dillon now seeks to remand this action to New York Supreme Court, arguing that the complaint turns not on the group policy, which she does not dispute is governed by ERISA, but instead raises claims respecting the second, individual policy which she asserts is not governed by ERISA. Because the Court finds that this action turns primarily on plaintiff's rights arising from the group plan—specifically her right to convert that plan to an individual one and the consequences of such a conversion—it concludes that the complaint raises a federal question and therefore denies the motion to remand.

**I.     BACKGROUND**

Unless otherwise noted, the following facts are taken from the complaint:

    A.     The Parties

Karen E. Dillon is a New York resident and the widow of Jack F. Dillon, a former employee of the Parker Hannifin company. (Compl. ¶¶ 1, 3.) Mrs. Dillon is the legal representative of her late husband's estate. (Id. ¶ 1.)

Metropolitan Life Insurance Company is a New York corporation. At all times relevant to the complaint, MetLife issued group term life insurance to eligible employees at the Parker Hannifin company, including the late Jack F. Dillon. (Id. ¶¶ 2, 5.)

      B.     Dillon's Group Life Insurance Policy

This action centers on a group term life insurance policy issued to Mr. Dillon by MetLife during his employment at Parker Hannifin. As an eligible employee, Mr. Dillon was entitled to a $50,000 group term policy and was allowed to purchase additional insurance, which he did. In total, Mr. Dillon held $837,000 in life insurance under the group policy for which he paid a monthly premium of $172.35. (Id. ¶¶ 5, 16.) Plaintiff was named as the primary beneficiary under the policy. (Id. ¶ 6.)

Defendant contends—and plaintiff does dispute—that the group policy was issued by MetLife pursuant to an "employee benefit plan" as defined by ERISA. (Aff. of Patricia Curran Reinhardt dated Oct. 15, 2009 "Reinhardt Aff." ¶ 2; Pl.'s Mem. of Law at 2.) As such, Parker Hannifin was the plan "sponsor" and MetLife administered the plan, namely issuing policies and handling claims made pursuant to the plan in accordance with the requirements of the plan terms and ERISA. (Id.) Pursuant to the terms of that policy and consistent with the requirements of ERISA, if a covered employee became ineligible due to termination or for any other reason, that employee had a right to "convert" the group policy into an individual policy. (Reinhardt Aff. ¶ 4; Compl. ¶ 10.)[1]

---

[1] The process of conversion entails turning an existing group insurance policy into an individual one when the covered person is no longer eligible to remain covered under the group plan. The right to convert a group plan into an individual one is conferred and governed by the terms of the group plan. However, once the policy is successfully converted, the new individual policy no longer involves the group plan or its sponsor—generally the employer—but instead is a private contract between the covered person and the insurer. See generally Howard v. Gleason Corp., 910 F.2d 1154, 1157 (2d Cir. 1990).

3

According to the complaint, in March 2008, Dillon was diagnosed with what would prove to be terminal cancer. His last day of work at Parker Hannifin was March 24, 2008. He was placed on long-term disability the same day. (Id. ¶¶ 7-8.) Several months later, as the seriousness of Mr. Dillon's condition became apparent, plaintiff began corresponding with Parker Hannifin regarding the group life insurance policy. (Id.) During the course of those conversations, plaintiff contends she was informed that her husband had been "terminated" by Parker Hannifin six months after he was placed on long-term disability—i.e., as of September 24, 2008—and that pursuant to the terms of the group life insurance policy, she would have to convert the group policy into an "individual life insurance policy." (Id. ¶¶ 9-10.)

Accordingly, on October 13, 2008, plaintiff met with a MetLife representative to discuss the conversion process. During that meeting, however, plaintiff contends that the MetLife representative informed her that, "[i]nstead of effectuating a conversion of the policies . . . her only option was to buy a new policy with a death benefit totaling $837,000" and with a "monthly premium of $2,382." Plaintiff therefore completed an application for the "new" policy naming herself as the primary beneficiary under it and wrote a check to MetLife for $2,382. (Id. ¶¶ 12-13, 16.) That application was approved by MetLife on October 26, 2008. Consistent with her view that the conversion created a "new" policy, plaintiff also continued to make payments on the group term policy in the amount of $172.35. (Id. ¶ 14.)

On October 29, 2008—just three days after MetLife approved the "new" policy—Mr. Dillon passed away. Plaintiff then filed claims pursuant to both the original group term policy and the individual policy. In letters dated November 3 and 4, 2008, MetLife

informed plaintiff that she would receive the full proceeds of the group term policy—i.e., $837,000—but that she would not also be able to recover under the individual policy because that policy had been issued "in error." (Id. ¶¶ 18-19.) Specifically, MetLife informed plaintiff that Mr. Dillon had never actually been terminated by Parker Hannifin, and, as a result, he remained covered by the group policy and thus had been ineligible to effect a "conversion" of that group coverage into an individual policy. (Id. ¶ 19; Reinhardt Aff. ¶¶ 5-7.) Accordingly, MetLife "rescinded" the October 26, 2008 contract, refunded plaintiff the $2,382 she had paid as the first monthly premium on that contract, and paid her the full $837,000 due under her husband's group policy (Compl. ¶¶ 18-19.)

    C.    This Action

Plaintiff then commenced this action in New York Supreme Court, raising a claim for breach of contract—that is, breach of the "terms of the Second Policy"—and seeking a declaratory judgment that "MetLife has breached its obligations . . . under the Second Policy" and owes plaintiff an additional $837,000 on top of the $837,000 it has already paid her. (Id. ¶¶ 22-33.)   Plaintiff's theory of the breach rests on her assertion that the application she submitted in October 2008—which is prominently labeled "Conversion of Group Life Benefits to an Individual Policy" (Ex. B to Decl. of Frank S. Occhipinti in Supp. of Pl.'s Mot. to Remand dated Oct. 1, 2009 ("Occhipinit Decl.")) (emphasis added)[2]—in fact led not to conversion of the existing policy but instead to creation of a second, additional individual policy.

---

[2] While a court is normally limited to the face of the complaint on a motion to remand, see Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998), plaintiff's application for the conversion is expressly referenced by the complaint and is "integral to the complaint" and therefore may be properly considered on this motion. See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005) (citation omitted).

5

Shortly after receiving the summons and complaint, MetLife removed this action to federal court, contending that the complaint seeks benefits pursuant to a policy governed by ERISA and therefore falls within this Court's federal question jurisdiction. Plaintiff argues that the only policy at issue here is the "second" policy issued in October 2008 which, as an individual policy, is not within the purview of ERISA. Dillon thus contends that the complaint raises solely state law claims and was improperly removed.

## II. DISCUSSION

By statute, a state court defendant may remove to federal court any "civil action" over which a federal court has "original jurisdiction." 28 U.S.C. § 1441. The removing party bears the burden of proving that it has met the requirements for removal. Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004); Flynn v. McDaniel, No. 08 Civ. 11059, 2010 U.S. Dist. LEXIS 15747, at *8 (S.D.N.Y. Feb. 23, 2010). Accordingly, to establish that this action was properly removed, defendants must show that the action falls within either this Court's diversity jurisdiction or its federal question jurisdiction.

Absent diversity of citizenship—which no party suggests is present here—federal courts have original jurisdiction only over cases that present federal questions. Fax Telecommunicacaciones, Inc. v. AT&T, 138 F.3d 479, 486 (2d Cir. 1998). Ordinarily, a federal question exists "only when a plaintiff's well-pleaded complaint raises issues of federal law." Metro Life. Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). However, a "limited exception" to that rule exists where "Congress has so completely preempted an area of law that any civil complaint is necessarily federal in character." Williams Ins. Trust v. Travelers Ins. Co., 50 F.3d 144, 147 (2d Cir. 1995). Under those circumstances,

6

"a complaint facially grounded in state law will nonetheless be deemed to arise under federal law and is removable." Id.

ERISA contains an express preemption provision: section 514(a) of that Act provides that the federal law "shall supersede any and all State laws insofar as they now or hereafter relate to any employee benefit plan" covered by the Act. 29 U.S.C. § 1144(a). Accordingly, where "[a] claim styled as a state common law cause of action . . . 'relates' to an employee benefit plan within the meaning of section 514(a) . . . and falls within the scope of the statute's civil enforcement provisions" the action "is removable." Williams Ins. Trust, 50 F.3d at 149;[3] see also AETNA Health Inc. v. Davila, 542 U.S. 200, 209 (2004) ("Any state law cause of action that duplicates, supplements, or supplants [that] ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted.")

Consistent with section 514(a), the U.S. Court of Appeals for the Second Circuit has established that claims arising from an employee's right to take out a conversion policy—that is, to convert a group policy into an individual policy—are governed by ERISA and are therefore properly removable. See Howard v. Gleason Corp., 901 F.2d 1154, 1158 (2d Cir. 1990); Ziperski v. First Unum Life Ins. Co., No. 05 Civ. 7798, 2006 U.S. Dist. LEXIS 3116, at *5 (S.D.N.Y. Jan. 30, 2006). By contrast, courts in this circuit have repeatedly found that "claims arising from the conversion policy itself are not preempted by the statute." Ziperski, 2006 U.S. Dist. LEXIS 3116, at *5 (collecting cases); see also Arancio v. Prudential Ins. Co., 247 F. Supp. 2d 333, 336 (S.D.N.Y. 2002).

---

[3] ERISA's civil enforcement provision authorizes any plan participant or beneficiary to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan" or "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(1)(B), (a)(3).

7

Here, plaintiff contends that remand is appropriate because this action falls into the latter category—that is, an action raising claims arising out of the converted policy itself. The Court disagrees. The core of the dispute in this action stems not from the converted policy but instead from the process of conversion and the consequences of that process. If, as plaintiff contends, the conversion process had the effect of creating a second—and <u>additional</u>—policy, then she may be entitled to be paid separately under each policy. By contrast, if, as MetLife argues, that conversion process did not create a second, additional policy but simply changed the existing policy from a group one into an individual one, then plaintiff cannot recover twice, irrespective of whether the original group policy should properly have continued to be treated as a group policy or instead converted to an individual policy.

Resolving that dispute, as plaintiff herself concedes, turns on the language of the ERISA-covered group plan and the terms of its conversion privilege. (Pl.'s Rep. Mem. at 3.) Cf. <u>Howard</u>, 901 F.2d at 1157 (A plan's "conversion privilege" constitutes "a primary administrative functions of [the] benefits plan[ ]" and therefore "triggers ERISA preemption"). Accordingly, the action "relates" to "employee benefit plan within the meaning of section 514(a)" of ERISA and is one that must be brought pursuant to ERISA's civil enforcement remedy.

For the same reason, plaintiff's alternative argument that this case is about "state law regarding unilateral mistake" is equally without merit. There is no dispute that a "mistake" was made—either by Parker Hannifin or by MetLife in deeming Mr. Dillon's employment to have been "terminated"—and, that a result of that mistake, the conversion process commenced. But as noted, plaintiff's right to recover a second payment of

$837,000 does not turn on whether the conversion was mistaken or proper—it turns on the consequences of that conversion. And that issue is governed by the terms of the group plan being converted and is thus properly and exclusively actionable pursuant to ERISA's civil enforcement remedy.[4] See Devlin v. Transp. Communs. Int'l Union, 173 F.3d 94, 101 (2d Cir. 1999) (attempt to modify a covered plan "necessarily involve[s] interpreting the plan, its design, and ERISA" and is thus properly removable.") Accordingly, this action raises a federal question and was properly removed.

### III. CONCLUSION

Because the Court finds that this action turns on the "conversion privilege" contained in an ERISA-covered group term plan, it concludes that the complaint raises a federal question and was therefore properly removed by defendant. Accordingly, plaintiff's motion to remand this action to Supreme Court, New York County, is denied.

Dated: New York, New York
       June 7, 2010

SO ORDERED:

Sidney H. Stein, U.S.D.J.

---

[4] Because the Court denies plaintiff's motion to remand, it also denies plaintiff's request for its costs and fees incurred as a result of MetLife's removal of this action.

9